UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACK SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 C 5238 |
| v. ) | |
| ) | Judge John W. Darrah |
| JOHN M. DUFFEY, JOHN SHAW ) | |
| and JAY W. ALLEN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jack Smith, filed suit against Defendants, John Duffey, John Shaw and Jay Allen, alleging fraud and violation of the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA), N.C.G.S. § 71-1, *et seq.* Before the Court is Defendants' Motion to Dismiss and to Strike.

## BACKGROUND

This case stems from a business deal between Plaintiff and Defendants' employer, Dade Behring, Inc. ("Dade Behring). Dade Behring, which has headquarters in Deerfield, Illinois, is a large clinical diagnostic company that offers a wide range of products and systems for diagnostic testing. Defendants, all Illinois citizens, are employees of Dade Behring. Plaintiff, a citizen of North Carolina, was the majority stockholder in Chimera Research and Chemical, Inc. ("CRC"). CRC was in the business of selling urinalysis and adulteration testing and held numerous patents in that field.

In November 1999, Plaintiff and Dade Behring entered into a "Stock Purchase Agreement" relating to the purchase of Plaintiff's controlling stock interest in CRC. In connection with the Stock Purchase Agreement, Plaintiff received options to purchase 20,000 shares of Dade Behring Holdings ("Dade Holdings") stock.[1] At the same time, Dade Behring and Inventeck, Inc. ("Inventeck"), a company controlled by Plaintiff, entered into a "Research and Development Agreement," in which Inventeck and Plaintiff agreed to provide services in the area of laboratory sample adulteration.

Disputes arose between Plaintiff and Dade Behring, and the parties began negotiating a "Termination Agreement" in 2001 Defendants Allen and Shaw negotiated on behalf of Dade Behring. The Termination Agreement provided that Dade Behring would pay Plaintiff over $1.4 million in cash and terminated certain obligations of Plaintiff, Inventeck and Dade Behring. A condition precedent of the Termination Agreement was written confirmation of the stock options claimed by Plaintiff under the 1999 Stock Purchase Agreement. In May 2002, Dade Behring provided a letter, confirming Plaintiff's options.

On August 1, 2002, Dade Holdings and Dade Behring filed for protection under Chapter 11 of the United States Bankruptcy Code. Their plan of reorganization was confirmed on September 19, 2002. The plan of reorganization cancelled all equity interests, including Plaintiff's stock options.

---

[1] Defendants admit that the stock options were discussed during negotiations but deny that they were included in the actual Stock Purchase Agreement. However, for the purposes of this motion, Plaintiff's allegations will be taken as true.

2

Plaintiff filed suit against Defendants and Dade Holdings in the U.S. District Court for the Western District of North Carolina for breach of contract, fraud, unfair and deceptive trade practices and declaratory relief (the "North Carolina Suit"). After Dade Holdings reopened its bankruptcy case to enforce the confirmation order and discharge injunction, Plaintiff voluntarily dismissed his claims against Dade Holdings. Plaintiff maintained the North Carolina Suit against the three individual defendants, Duffey, Shaw and Allen; but the court dismissed the complaint for lack of personal jurisdiction. Plaintiff refiled his case in this Court on September 17, 2007.

Plaintiff alleges that Defendants engaged in a scheme to defraud consisting of false statements and deliberate omissions of material fact that were designed to induce Plaintiff to enter into the Termination Agreement. Specifically, Plaintiff alleges that during the negotiation of the Termination Agreement, Defendants knew that Dade Behring would file for bankruptcy and that the bankruptcy would have the effect of cancelling Plaintiff's stock options.

## LEGAL STANDARD

In ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, __ U.S. __, __, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a

3

'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic*, 127 S. Ct. at 1965, 1973 n. 14). Furthermore, allegations of fraud must be pled with particularity: "[a] complaint alleging fraud must provide "the who, what, when, where, and how." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990)). Plaintiff must properly plead fraud as to each individual defendant. *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990).

## ANALYSIS

### *Common-Law Fraud*

The parties dispute what state law controls: Plaintiff argues that North Carolina law applies; Defendants argue that Illinois law applies. Both the 1999 Stock Purchase Agreement and the Termination Agreement, from which Plaintiff claims this suit arises, contain choice-of-law provisions mandating the use of Illinois law. Therefore, the Court will apply Illinois law to Plaintiff's common-law fraud claim.[2]

To state a claim for common-law fraud, a plaintiff must allege "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 496 (1996) (*Connick*). Additionally, to state a claim for fraud by

---

[2] As explained below, the result would be the same under North Carolina law.

omission, "a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Connick*, 174 Ill.2d at 500. Plaintiff purports to state a claim based on both Defendants' false statement and omissions of material facts.

Turning first to the question of omission, the main thrust of Plaintiff's fraud allegation is that Defendants knew that Dade Behring would be filing for bankruptcy and that the bankruptcy would negatively affect the value of Plaintiff's stock options. Defendants respond that they were under no duty to Plaintiff to disclose the planned bankruptcy and, furthermore, that the omission was not material. Putting aside materiality for the moment, Defendants are correct that Plaintiff's Complaint does not allege that Defendants were under any duty to disclose the planned bankruptcy. Plaintiff tries to remedy this defect in his response to Defendants' motion to dismiss by claiming, for the first time, that Plaintiff and Defendants were engaged in a joint venture: "the plaintiff and Dade Behring, and the defendants as officers and agents of Dade Behring were fiduciaries because they were joint venturers and business partners." This theory is not set out in Plaintiff's complaint, nor are any facts alleged there that would in any way support an allegation of joint venture. Thus, Plaintiff's claim for fraud by omission fails because Plaintiff has not alleged that Defendants owed Plaintiff any duty to disclose the planned bankruptcy.

The next question is whether Defendants made any false statements to Plaintiff. Reviewing the allegations in Plaintiff's Complaint, it appears that rather than attempting to induce Plaintiff to accept the stock options, Defendants were trying to warn Plaintiff that they were worthless. According to Plaintiff's Complaint, Defendants Allen and Shaw told Plaintiff that Plaintiff's options "were valueless now because the exercise price associated with the options was higher than [the price of the stock]." Additionally, a letter from Defendant Allen to

5

Plaintiff sought to remind Plaintiff of a previous conversation in which Defendants warned Plaintiff that "the shares may be valueless." In an attempt to paint these warnings as misleading, Plaintiff focuses on the qualifying terms used by Defendants in these statements – that the options were valueless *now*, and that the shares "*may* be valueless." However, if there is any false aspect of these statements, it is only in what they omit, specifically, Dade Behring's planned bankruptcy. Thus, these statements do not satisfy the requirement of a false material statement.

Moreover, Plaintiff has not sufficiently alleged facts showing that he reasonably relied on Defendants' statements or silence regarding the planned bankruptcy. To sustain a claim for common-law fraud, a plaintiff must demonstrate that he "justifiably relied on defendant's words or silence." *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App.3d 642, 651 (Ill. App. 1 Dist. 2001) (*Miller*) (quoting *Central States Joint Board v. Continental Assurance Co.*, 117 Ill. App.3d 600, 606 (Ill. App. 1 Dist. 1983). "The law will not allow a person to enter into a transaction with eyes closed to material facts and then claim fraud by deceit." *Miller*, 326 Ill. App.3d at 651.[3]

Here, Plaintiff's allegations in the Complaint demonstrate that Defendants warned Plaintiff on multiple occasions that the options he claimed were worthless and that Dade Behring was in serious financial difficulty. In December 2001, Defendants Allen and Shaw told Plaintiff that his options were valueless. That same month, Shaw told Plaintiff that Dade Behring would "have to restructure debt" and that it would do so with a "change of ownership." In early 2002, Allen told Smith that Dade Behring was "a financially distressed company." In a letter to

---

[3] Reasonable reliance is also an element of fraud under North Carolina law. *Hudson-Cole Development Corp. v. Beemer*, 132 N.C. App. 341, 346 (N.C. App. 1999).

6

Plaintiff dated May 3, 2002, Defendant Allen stated, "I would like to reiterate our previous discussion . . . that the shares may be valueless." Even drawing all inferences in favor of Plaintiff, it appears that, short of actually disclosing Dade Behring's bankruptcy plans to Plaintiff, Defendants did everything they could to convince Plaintiff not to demand stock options as part of the Termination Agreement. Thus, Plaintiff has failed to allege facts showing that he reasonably relied on Defendants' statements or silence.

*North Carolina Unfair and Deceptive Trade Practices Act*

Defendants argue that Plaintiff may not state a claim under the North Carolina UDTPA, N.C.G.S. § 71-1, *et seq.*, because the act does not reach outside the boundaries of North Carolina. The reach of the UDTPA is coextensive with that of the North Carolina long-arm statute, *see The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F.Supp. 494, 501 (M.D.N.C. 1987), which, in turn, extends to the full limit "permissible under federal due process." *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676 (1977). The court in the North Carolina suit has already held that Defendants are not subject to the personal jurisdiction in North Carolina. Plaintiff is barred by collateral estoppel from relitigating that issue. *See e.g., H-D Michigan, Inc. v. Top Quality Service, Inc.*, 496 F.3d 755, 760 (7th Cir. 2007) (issues decided in prior litigation that were necessary to the final judgment are precluded from being disputed again by a party represented in the prior action). Therefore, because North Carolina's long-arm statute does not reach Defendants, Plaintiff cannot state a claim against them under the UDTPA.

## CONCLUSION

For the foregoing reasons, Plaintiff has failed to sufficiently state a claim against Defendants for either common-law fraud or under the UDTPA. Therefore, Defendants' Motion to Dismiss is granted.

Dated: June 23, 2008

JOHN W. DARRAH
United States District Court Judge